# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**CHARLES YEX,**

       **Plaintiff,**

**v.**                                                  **Case No:   6:14-cv-763-Orl-DAB**

**CITY OF DAYTONA BEACH,**

       **Defendant.**

## ORDER

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**    **MOTION TO DISMISS SECOND AMENDED COMPLAINT (Doc. 20)**
>
> **FILED:**     **August 28, 2014**
>
> ---
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED as set forth below**.

The City of Daytona Beach moves to dismiss the claims of Plaintiff Charles Yex asserting §1983 claims arising out of his arrest in October 2012 at Bikeweek in Daytona Beach.  Plaintiff has filed a response to the City's Motion, however, the Response fails to sufficiently clarify his complaint to warrant it going forward. For the reasons discussed below, the City's motion to dismiss is due to be **GRANTED** and the § 1983 municipal liability claims against the City **DISMISSED without prejudice** and the state law claims **DISMISSED with prejudice**.

### I.     Procedural History

On May 15, 2014, Plaintiff filed suit against the Defendant City of Daytona Beach asserting claims for violation of 42 U.S.C. §1983, giving rise to municipal liability for violation of the First Amendment (free speech-Count I), Fourth Amendment (search and seizure–Count II), and

Fourteenth Amendment (equal protection-Count III), and for the City's vicarious liability for the officers' alleged violation of state law in the use of "excessive force and battery" (Count IV) and "intentional infliction of emotional distress." (Count V).  On June 10, 2014, the City moved to dismiss the complaint (Doc. 7), and Plaintiff filed an Amended Complaint on June 24, 2014 (Doc. 10).  On July 9, the City filed a Motion to Dismiss the Amended Complaint (Doc. 13) and Plaintiff sought leave to file a Second Amended Complaint (Doc. 15), which was granted.  Doc. 18. Plaintiff filed the Second Amended Complaint on August 15, 2014 (Doc. 19), the City filed a Motion seeking to dismiss it on August 28, 2014 (Doc. 20), and Plaintiff responded on September 11, 2014. Doc. 21.

**II.     Background Facts[1]**

At approximately 2:00 a.m. on October 21, 2012, the Plaintiff was arrested by officers of the Daytona Beach Police Department while leaving in a taxicab from "Bikefest" in Daytona Beach. Doc. 19 ¶ 13; Doc. 21 at 1.  Just before Plaintiff was arrested, an altercation commenced between the occupants of a vehicle improperly stationed on Main Street and Plaintiff and his friends. Doc. 19 ¶ 14; Doc. 21 at 2.  Plaintiff summoned police officers for assistance to prevent any further escalation, and Daytona Beach Police officers responded to the scene.  Doc. 19 ¶ 16.  Plaintiff criticized these police officers for what he perceived to be lax police investigative work and their unwillingness to take corrective action against the other group of people for their behavior.  *Id*. ¶ 17.  During the investigation, these police officers decided to arrest Plaintiff because of his criticism.  *Id*. ¶ 18. Although the Plaintiff was cooperative during the entire incident, including his arrest, these police officers used excessive and unnecessary force to handcuff him, throwing him

---

[1] The Court accepts as true all well-pled factual allegations in the Second Amended Complaint, viewing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

forcefully to the ground, with one officer pushing his knee against the Plaintiff's neck, and pulling Plaintiff's arms in different directions, and another officer kicking Plaintiff in the ribs. *Id.* ¶ 20, 21.

At no time during his interaction with the police officers did Plaintiff act violently, threaten anyone verbally or physically, or interfere with the police officers' investigation, behave in a disorderly manner, or use words that by their very utterance would inflict injury. *Id.* ¶¶ 22-24. Originally, the Officers informed Plaintiff that he would be charged with violating Florida Statute § 877.03 (disorderly conduct) and violating Florida Statute § 843.02 (Resisting Officer without Violence); however, he was ultimately charged only with disorderly conduct. *Id.* ¶ 25.

Immediately after the wrongful arrest incident, the Plaintiff began to experience excruciating pain. *Id.* ¶ 26. Plaintiff was placed by the police officers in a paddy wagon for over two hours without any inquiry from the officers as to whether the Plaintiff needed medical attention or had an injury. *Id.* ¶ 27. When the police officers attempted to move the Plaintiff to another paddy wagon, Plaintiff was in too much pain and could not move, and was ultimately transported by ambulance to a hospital for evaluation and treatment of his injuries *Id.* ¶¶ 28-29. When Plaintiff was medically evaluated at the hospital, medical personnel determined Plaintiff had suffered serious, painful and permanent bodily injury, including fractured ribs and lacerations to his face and limbs. *Id.* ¶ 30.

### III. Standard for Motion to Dismiss

Federal Rule of Civil Procedure 8 provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The pleader must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[D]etailed factual allegations" are not required, but mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accept[s] the allegations in the complaint as true and

constru[es] them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

### IV.     Standard for Pleading Municipal Liability – Counts I, II, and III

In Counts I, II, and III, Plaintiff contends that the City of Daytona Beach is liable under Section 1983. In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that municipalities may not be held liable under 42 U.S.C. § 1983 on a theory of *respondeat superior.* Municipalities instead can only be held liable for the execution of a governmental policy or custom. As the *Monell* Court explained:

> [I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694. To press a claim under § 1983 against a municipality, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004); *see City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (to state a claim for municipal liability the complaint must allege a sufficient factual basis to establish a widespread practice of unconstitutional conduct that was so well-settled and permanent as to constitute a custom). This requires a plaintiff's complaint against a municipality to "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Randall v. Scott*, 610 F.3d 701, 707 n. 2 (11th Cir. 2010) (citation and internal punctuation omitted). A policy or custom that would create municipal liability can be either a written custom or policy, such as an ordinance, or an unwritten practice that is so widespread and "so permanent and well settled as to constitute a custom or use with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

The City argues that Counts I, II, and III of Plaintiff's Second Amended Complain fail to state claims for municipal liability pursuant to 42 U.S.C. §1983, because there are no factual allegations to support Plaintiff's conclusory claims of municipal custom and policy. The City also argues that Plaintiff's Fourth Amendment search and seizure claim fails to state a claim for excessive force because it is vague and conclusory, and his Fourteenth Amendment Equal Protection claim fails when analyzed under the Fourth Amendment reasonableness standard. As to Plaintiff's state law claims for excessive force and battery and intentional infliction of emotional distress, the City contends they fail to state a claim because it is entitled to sovereign immunity from claims of malicious conduct.

Plaintiff municipal liability allegations fall into three main categories:   (1) the City allegedly failed to train[2], supervise, and/or discipline unnamed police officers on the "proper procedures on how to act around a disgruntled citizen who peacefully expresses his criticism of the [City] Police Department and [its] officers and on what speech may not be legally suppressed [by those] who arrested Plaintiff" (Doc. 19 ¶¶ 43, 46, 48, 65, 68, 70, 88, 91, 93); (2) the City failed to distribute a manual with department policies, local ordinances, and state statutes regarding permissible and impermissible conduct by the City's police officers, providing yearly updates (*Id*. ¶¶ 44-45, 66, 67, 89, 90); and (3) the City failed to investigate complaints against the police officers involved in the Plaintiff's wrongful arrest, and institute necessary remedial training for the officers. (*Id*. ¶¶ 47, 69, 92).

**V.     Application**

---

[2] Plaintiff specifically alleges the City failed to institute and/or enforce remedial and/or specialized training programs for police officers whose job descriptions changed and/or who were promoted (as these officers allegedly were).   Doc. 19.

Plaintiff alleges that the City is liable under Section 1983 because it failed to properly hire, train, supervise, control and/or discipline the officers who arrested him. Defendant City was thus deliberately indifferent to the rights of others in adopting its hiring and training practices, and in failing to supervise, control and/or discipline its officers such that those failures reflected a deliberate or conscious choice by Defendant City.

The City argues that this claim should be dismissed because Plaintiff has failed to allege any facts that would support this theory of liability. The City argues that Plaintiff's Second Amended Complaint is devoid of factual allegations that even suggest widespread prior abuse or complaints putting the City on notice of a need for improved training or supervision as to any particular constitutional violation, and he fails to assert even one instance of prior unconstitutional conduct by City police officers, but instead, asserts municipal liability based on cookie-cutter conclusory allegations of custom and policy. Doc. 20. The City argues Plaintiff merely "asserts identical conclusory allegations, masquerading as fact" that the City's has a "custom to systematically allow DBPD officers to punish citizens who exercise their rights to free speech when that speech is critical of the [the City's Police Department]." Doc. 21 (citing Doc. 19, ¶ 39, 61, & 84).

Plaintiff argues his allegations are sufficient to maintain his civil rights claims because, on a motion to dismiss, he is only required to plead and prove deprivation of a federal right and that the deprivation occurred as a result of the defendant acting under color of state law. Plaintiff acknowledges the *Iqbal* and *Twombly* Rule 12 standard but ignores the application of these requirements in cases of municipal liability.

A municipality may be sued directly under Section 1983 "if it is alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *City of Saint Louis v. Praprotnik*, 485 U.S. 112, 121 (quoting *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690 (1978)). A municipality's failure to train

its officers may constitute a "policy" on which liability may rest. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001). This liability is narrow, arising only where a municipality's failure to train its officers "reflects a 'deliberate' or 'conscious' choice by [the] municipality." *Harris*, 489 U.S. at 388. As explained by the Supreme Court:

> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

*Id.* at 390.

The Eleventh Circuit instructs that a municipality's failure to train "can amount to deliberate indifference when the need for more training is obvious, such as when there exists a history of abuse by subordinates that has put the supervisor on notice of the need for corrective measures, and when the failure to train is likely to result in the violation of a constitutional right." *Belcher v. City of Foley, Ala.*, 30 F.3 1390, 1397–98 (11th Cir. 1994). Additionally, a "municipality's failure to correct the constitutionally offensive actions of its police department may rise to the level of a 'custom or policy' if the municipality tacitly authorizes these actions or displays deliberate indifference towards the police misconduct." *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987). Proof of deliberate indifference generally requires a showing "of more than a single instance of the lack of training or supervision causing a violation of constitutional rights." *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003)). The municipal policy must be the "moving force" behind the constitutional violation and, in addition, the "identified deficiency in a city's training program must be closely related to the ultimate injury." *Harris*, 489 U.S. at 391.

Plaintiff argues that his statements of facts are "more than sufficient" to state failure to train, supervise, or discipline claims against the City and to maintain his causes of action under the theory of municipal liability. In his Second Amended Complaint, Plaintiff alleges:

> At the time of the incident complained herein, the Defendant, as principal of DBPD, had a custom, policy, practice and/or procedure in place that allowed its police officers to violate the civil liberties of any person that peacefully and legally protested the actions of its police officers. Said violations consisted of threats, intimidation, detainment, and physical abuse of persons expressing disapproval of the DBPD and its officers. (See Second Amended Complaint, Paragraphs 38, 60, and 83).
>
> As a result of its policies, customs, and procedures, or lack thereof, the Defendant failed to properly train, supervise, and/or discipline said police officers on proper procedures on how to act around a disgruntled citizen who peacefully expresses his criticism of the DBPD and DBPD officers and on what speech may not be legally suppressed. (See Second Amended Complaint, Paragraphs 43, 65, and 88). In addition, the Second Amended Complaint pleads with sufficient fair notice of claim the improper instances of the Defendant's failure to properly train, supervise, and/or discipline its police officers.
>
> Also, the Plaintiffs Second Amended Complaint includes three counts (Counts I, II, and III) for infringement upon the Plaintiff's civil rights in violation of 42 U.S.C. §1983, which allows for redress for deprivation of any rights, privileges or immunities secured by the Constitution and laws. The violations of the First Amendment, Fourth Amendment, and Fourteenth Amendment are properly included in three separate counts of the Complaint and properly cite substantial factual allegations to maintain all three separate causes of action. In relevant part, 42 U.S.C. §1983 conditions liability and redress upon "deprivation of any rights, privileges, or immunities secured by the Constitution and law.
>
> Here, the Plaintiff has adequately pled the existence of a policy or custom so as to render the City liable under *Monell*. The Second Amended Complaint alleges that "the Defendant's policies, customs, and procedures, or lack thereof, were the driving force causing said police officers to act as described . . . including to use unnecessary force, and to restrain and injure the Plaintiff" (See Second Amended Complaint, Paragraphs 42, 64, and 87) The Plaintiff further attributes deliberate indifference to the Defendant as part of his claim for municipal liability and the allegations of a custom and practice are sufficiently pled to allege institutionalized unconstitutional conduct prior to the incident involving the Plaintiff. The Plaintiff relies on far more than mere conclusory assertions that some unconstitutional policy exists, but instead has identified the unconstitutional policies and/or custom of threats, intimidation, detainment, and physical abuse.

Doc. 21 at 6-7.

Despite his lengthy citation to his Second Amended Complaint which repeatedly alleges the City's had "a custom, policy, practice and/or procedure in place that allowed its police officers to violate the civil liberties of any person that peacefully and legally protested the actions of its police officers" and these "policies, customs, and procedures, or lack thereof, were the driving force causing said police officers to act as described," the fact is that Plaintiff has not alleged *what* specific custom or policy, or deliberate indifference, by the City led to his injury to support of his claims. *Twombly* requires more than legal conclusions; the plaintiff must allege facts sufficient to give rise to liability. 550 U.S. at 554, 127 S.Ct. 1955.

Other courts have recognized that to survive a motion to dismiss on a § 1983 failure to train claim, the plaintiff must allege sufficient facts to suggest that the injury occurred as a result of the city's official policy or widespread custom and not simply the facts of the plaintiff's own arrest, without more, to show it was not an isolated occurrence. *See, e.g., Reyes v. City of Miami Beach*, No. 07-civ-22681, 2008 WL 686958 (S.D.Fla. March 13, 2008)(dismissing plaintiff's excessive force claim where she offered "nothing to show it was not . . . isolated"); *compare Oporto v. City of El Paso*, No. EP-10-cv-110, 2010 WL 3503457, *8 (W.D. Tex. Sept. 2, 2010) (denying motion to dismiss an excessive force-failure to train claim where plaintiffs provided a list of thirty-two incidents of officers using allegedly excessive deadly force which supported an inference that the city had failed to train its officers in the proper use of deadly force, and that this failure to train perpetuated the pattern); *Rivera v. City of San Antonio*, No. 06–CV–235, 2006 WL 3340908 (W.D.Tex. Nov. 15, 2006) (finding that a pattern was alleged by citing that the police department had received hundreds of complaints involving the use of excessive force by officers); *Starstead v. City of Superior*, 533 F.Supp. 1365, 1369 (W.D.Wis. 1982) (finding that a pattern was alleged by describing a systematic pattern of misuse of police dogs and citing five separate incidents involving seven persons).

Plaintiff argues, however, that the holdings of *Monell* and its progeny, decided at the summary judgment stage, are inapposite to the facts of his case, which is being assessed at the lower threshold of the motion to dismiss stage. "The [City] improperly and prematurely attempts to argue that the Plaintiff has not and will not be able to prove municipal liability, as if the Defendant were clairvoyant as to what can and will be proven by the Plaintiff at trial." Doc. 21 at 7. "Plaintiff contends that further detail can and will be sought through the discovery process and further detail is not necessary at this point to maintain a cause of action in this case." Doc. 21 at 8.

The Court agrees with the City that there are no factual allegations that support the municipal liability claims. There are no allegations that there were excessive force complaints against the arresting officers in this case or in other cases. There are also no allegations that the City knew about past arrests in which arrestees were injured so that it could "tacitly authorize" such conduct or fail to investigate it. The general allegations of the Second Amended Complaint relate to the single incident involving the arrest of Plaintiff by unnamed officers. This is not a sufficient basis for this theory of liability. *See Sanchez v. Miami-Dade County*, No. 06-21717, 2007 WL 1746190, at \*2 (S.D.Fla. Mar. 28, 2007) (An "allegation that the [municipality] did not train and supervise its officers with no specifics is not sufficient to establish that the police officers were acting under an official [municipal] policy."); *see also, e.g., Hall v. Smith*, 170 Fed. Appx. 105, 108 (11th Cir. 2006) (affirming dismissal of section 1983 claim against a municipality where the plaintiff "alleged no factual support for his conclusory statement that the [municipality] had a policy or custom of grossly inadequate supervision and training of its employees"); *Cannon v. Macon County*, 1 F.3d 1558, 1565 (11th Cir. 1993) (affirming dismissal of section 1983 claim against the county where plaintiff failed "to allege any facts whatsoever to indicate that the alleged violation was a result of a County policy or practice that would give rise to County liability"); *Rosario v. Miami-Dade County*, 490 F.Supp.2d 1213, 1225 (S.D.Fla. 2007) (dismissing section 1983 claim where plaintiffs "failed to

allege any facts" in support of her claim beyond her own incident). As in the Middle District case of *Hall v. Smith*, Plaintiff has "not presented facts showing that the municipality knew of a need to train and/or supervise in a particular area. . . Plaintiff has not presented one incident of past misconduct which would have put the City on notice of a need for improved training or supervision. In sum, there are no allegations supporting a claim that there was a history of widespread abuse." No. 05-68J25MMH, 2005 WL 1871144, at *4 (M.D.Fla. July 27, 2005), *aff'd*, 170 Fed. Appx. 105 (11th Cir. 2006).

For the reasons stated above, Plaintiff's municipal liability claims (Counts I, II, and III) are due to be dismissed without prejudice[3]. Because it is not clear beyond doubt that Plaintiff is unable to make the necessary allegations, he will be given one additional opportunity to amend his complaint to state a claim within the dictates describe herein. Plaintiff is granted twenty-one (21) days from the date of this Order to file a Third Amended Complaint if he wishes to do so. Failure to do so will convert this dismissal into one with prejudice for purposes of entering a final judgment.

**VI.** **State Claims Are Barred by Sovereign Immunity**

The City argues that Plaintiff's "vicarious liability" claims for excessive force and battery (Count IV) and intentional infliction of emotional distress (Count V) fail to state a claim under state law because the City is entitled to sovereign immunity pursuant to Florida Statute. Section 768.28(9)(a) provides:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. . . The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or

---

[3] Given the disposition on Counts I, II, and III, the Court need not discuss the City's arguments regarding the sufficiency of Plaintiff's Fourth Amendment and Fourteenth Amendment claims. Doc. 20 at 6-9.

> constitutional officers shall be by action against the governmental entity, or the head of such entity in his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety or property. *The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.*

Fla. Stat. § 768.28(9)(a) (emphasis added).

Plaintiff alleged the City's officers used "excessive and unnecessary force to arrest the Plaintiff," and that "[s]aid officers' actions were malicious, deliberately violent, or oppressive." Doc. 19, ¶¶ 99, 109. Plaintiff does not offer any argument contradicting the City's position that sovereign immunity bars his claims, but, rather, argues that he has alternatively stated sufficient facts to maintain a cause of action against the City for excessive force and battery, citing the 1931 case of *Dixon v. State*, 132 So. 684 (Fla. 1931). However, he fails to point out the specific allegations that would be alternative to those alleging the officers acted in a "malicious, deliberately violent, or oppressive" fashion. Plaintiff does not address at all the City's position that his intentional infliction of emotional distress claims should also be dismissed on sovereign immunity grounds.

Although Plaintiff may have couched his claim as one of "negligent infliction of emotional distress," he alleged the intentional "violent and wrongful arrest by [City] police officers," by conduct that was "fraudulent, malicious, deliberately violent and oppressive, and/or carried out with wanton disregard for the rights of others." Doc. 19, ¶¶ 115, 120. To state a claim for intentional infliction of emotional distress ("emotional distress") under Florida law, a plaintiff must establish that the conduct (1) was intentional or reckless, (2) outrageous, (3) caused emotional distress to plaintiff, and (4) the emotional distress was severe. *Stewart v. Walker*, 5 So.3d 746, 749 (4th DCA 2009).

Plaintiff's intentional infliction of emotional distress and excessive force/battery claims against the City are barred by sovereign immunity. This is because the "reckless conduct" requirement of an emotional distress claim "is the equivalent of willful and wanton conduct" in Fla. Stat. § 768.28(9)(a), which protects Florida municipalities like the City from tort liability for any official's act "committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *See Coulson v. City of Hialeah*, 2010 WL 326053 (S.D. Fla. Jan. 21, 2010) (holding IIED claim barred by sovereign immunity in § 768.28(9)(a)).

For the reasons stated above, Plaintiff's state law claims for excessive force and battery and negligent/intentional infliction of emotional distress (Counts IV and V) are due to be dismissed with prejudice.

**DONE** and **ORDERED** in Orlando, Florida on March 2, 2015.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record